IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CLARENCE COMMINGS,** )  )  Plaintiff, )  )  vs. )  )  **MATTHEW FLOWERS,** )  )  Defendant. ) | Case No.: **3:11-cv-00643-JPG-PMF** |

**REPORT AND RECOMMENDATION**

**FRAZIER, Magistrate Judge:**

Before the Court is Defendant Mathew Flowers' (Doc. 39) motion for partial summary judgment. Plaintiff Clarence Commings has filed a response (Doc. 41), to which Flowers has filed a reply (Doc. 42). For the following reasons, it is recommended that the (Doc. 39) motion for summary judgment be denied.

## I.   FACTS

Plaintiff Clarence Commings was an inmate during all times relevant to this lawsuit at Pinckneyville Correctional Center ("Pinckneyville"), a state prison located in Pinckneyville, Illinois, and under the authority of the Illinois Department of Corrections ("IDOC"). Defendant Mathew Flowers was correctional officer employed by the IDOC at Pinckneyville at all times relevant to this lawsuit. Commings and Flowers have substantially different versions of the relevant events that are the subject of this litigation, which transpired in early-summer of 2010 and resulted in the severing of the top part of Commings' ring finger on his right hand. Their respective versions can be summarized as follows:

### a. Plaintiff Commings' Version

Sometime in late spring of 2010, Commings was placed in segregation. He quickly became dissatisfied with his conditions of confinement. Commings complained about a leaky sink that was flooding his cell. He continually complained to Flowers and other correctional officers in the gallery where he was confined. When nothing happened, he began writing correspondence to the prison administration. He also wrote a letter regarding his problems in Pinckneyville to the Illinois Governor, Pat Quinn.

Fed up with the lack of response to his complaints, Commings informed Flowers that he wanted to go on hunger strike. He believed that declaring a hunger strike would force the prison administration to place him another cell because prison staff was not supposed to place food trays in any cell where an inmate was on hunger strike. Commings shared his cell with another inmate so he believed that prison staff would ultimately have to move him to another cell in order for his cellmate to receive his tray of food. The hunger strike would also cause prison staff to fill out extra paperwork. Instead of filling out the paperwork or moving Commings to another cell, Flowers just gave a tray of food to Commings as if Flowers had not been informed of the hunger strike. This continued for three times a day for several days.

At one point during the hunger strike, Flowers became upset with Commings. Flowers believed that Commings was making illegitimate complaints in order to purposely cause problems for the prison staff. At one point, Flowers threatened Commings.

"I don't know where you think you're at, but we'll come in there and fuck you up down here," he warned.

After failing to successfully declare a hunger strike, Commings next attempted to get the attention of prison staff, including Flowers, by informing them that he was suicidal. Although he

was experiencing mental health issues, this was another effort to get moved from his cell. Prison staff took his threats seriously and moved Commings to another cell where he could be continually monitored. He was later placed back in segregation.

Less than a month later, on June 24, 2010, Flowers was going from cell to cell with an inmate porter. They were distributing ice to inmates in segregation on a hot day. Flowers would unlock the chuckhole, a small opening toward the bottom of the cell door that is used to distribute items to inmates without having to open the entire cell door. The inmate porter would then scoop out ice from a bucket and place it into an inmate's Styrofoam bowl. Flowers would then close the chuckhole and move on to the next cell. Commings recognized the sound of chuckholes opening and closing while ice was being scooped out of a bucket as they approached his cell.

When Flowers opened the chuckhole at Commings cell, he saw Commings and immediately became agitated.

"Commings, put you're fucking bowl in the chuckhole now," he demanded.

Commings asked Flowers why he was taking such an aggressive tone with him. Commings left one hand in the chuckhole as he reached back to grab his Styrofoam bowl. To his surprise, Flowers then slammed the chuckhole door closed. Commings' ring finger on his right hand was stuck in the chuckhole as Flowers attempted to force it closed. Commings screamed with pain as he tried to tell Flowers that his finger was still in the chuckhole. Flowers kept applying force to the chuckhole door. Finally, Commings' finger was completely severed just above the knuckle.

"You chopped my finger off!" cried Commings.

Blood began to flow from Commings' severed finger. While attempting to show his injury to Flowers, blood splattered onto Flowers' face and arms.

Flowers responded sharply, "You piece of shit. You got blood all over me."

Flowers then walked away. About five minutes later, Flowers' immediate supervisor, Lieutenant Williams, approached Commings' cell with several other officers. The cuffed him and brought him to the Health Care Unit. Commings was ultimately transported to the hospital, where he received care for his severed finger.

Sometime after the June 24 incident, Flowers approached Commings and stated, "I wish I could have chopped your whole fucking arm off."

Flowers authored a disciplinary ticket sometime after the incident wherein he accused Commings of assaulting him. Flowers wrote that he closed the chuckhole door as an impulsive reaction to Commings trying to assault him. After a hearing, Commings was found guilty of assaulting a staff member and was punished. Commings claims that the disciplinary action taken against him was fabricated by Flowers.

**b.  Defendant Flowers' Version**

On June 24, 2010, Flowers and an inmate porter were distributing ice to inmates. When they arrived at Commings' cell, Flowers opened the chuckhole and instructed Commings to place his bowl through the chuckhole. Commings did not immediately respond and was rummaging around in his cell. Flowers again instructed Commings to put his bowl out. Instead, Commings quickly lunged his arm out of the chuckhole in a violent manner toward Flowers' person. Commings grabbed onto Flowers' shirt near his waistline. Flowers reacted quickly by taking a step back and attempting to close the chuckhole door, as he was trained to do in these type of situations. The chuckhole door would not close. It occurred to Flowers that inmates

4

sometimes intentionally place their body parts inside the chuckhole to scratch or cut themselves and fling blood. Flowers released the chuckhole door. Commings then put his injured hand through the chuckhole and waived it around while telling Flowers that he had injured him. Blood splattered onto Flowers' face. Surprised by what had transpired, Flowers left the scene to wash up and inform his supervisor of the incident. Flowers filled out incident and disciplinary reports shortly after the incident in accordance with IDOC procedure.

Flowers has no recollection of any other interactions with Commings prior to or after the June 24 incident and did not have any knowledge of Commings complaints to the prison administration and Governor Quinn regarding his cell conditions.

## II.  PROCEDURAL HISTORY

Commings filed the instant lawsuit pursuant to 42 U.S.C. § 1983 ("§ 1983") on July 26, 2011 against Defendant Mathew Flowers. *See* Doc. 1. On September 7, 2011, the Court screened the complaint pursuant to its authority provided by 28 U.S.C. § 1915A. *See* Doc. 10. The Court found that Commings stated causes of action against Defendant Flowers for violations of Commings constitutional rights protected by the U.S. Constitution; Excessive force in violation of Commings' Eighth Amendment right to be free from cruel and unusual punishments (Count 1) and unlawful retaliation for exercising speech protected under the First Amendment (Count 3). *See id*. at 4-8. In addition, the Court ruled that Commings articulated two more causes of action under the Court's supplemental jurisdiction, 28 U.S.C. § 1367(a); battery (Count 2) and intentional infliction of emotional distress (Count 4). *See id*.

## III.  DISCUSSION

On October 11, 2012, Defendant Mathew Flowers filed the instant (Doc. 39) motion for partial summary judgment. Summary judgment is appropriate where "the movant shows that

there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc*., 211 F.3d 392, 396 (7th Cir. 2000). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by … citing to particular parts of materials in the record..." FED. R. CIV. P. 56(c)(1)(A). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396.

### A. First Amendment Retaliation

Flowers argues that he is entitled to summary judgment on Count 3, First Amendment retaliation, because Commings cannot prove that the actions that Flowers took against him were motivated by his constitutionally protected speech. To make a prima facie case of First Amendment retaliation, a plaintiff must demonstrate "(1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor in the [defendant]'s actions." *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012) *cert. denied*, 133 S. Ct. 489, 184 L. Ed. 2d 298 (2012) (citations and internal quotations omitted). Flowers has chosen not contest the second element of Comming's prima facie case; whether he has suffered a deprivation likely to deter free speech.

Flowers has also chosen not to challenge the first element of the prima facie case; whether Commings' speech was constitutionally protected. In order to proceed, the scope of Commings' constitutionally protected activity at issue in the instant motion must be defined. In his response to the motion for summary judgment, Commings has included the following factual allegations as constitutionally-protected activity:

> (1) making oral complaints to Defendant regarding the conditions of his confinement; (2) declaring a hunger strike to improve the conditions of his confinement and to protest Defendant's failure to take action to improve those conditions; (3) sending correspondence to prison administrators and Governor Pat Quinn complaining about the conditions of his confinement and Defendant's treatment of him; (4) submitting a witness statement and testimony to the Adjustment Committee that contradicted Defendant's false account of the chuckhole incident; and (5) sending a grievance regarding that incident and Defendant's conduct to Governor Pat Quinn. (Pl. Fact Nos. 1-7, 10-22.)

Doc. 41 at 15. Flowers did file a reply (Doc. 42) disputing some of what was presented in Commings' response. However, Flowers did not challenge the sufficiency of what Commings' interprets to be the allegations in his complaint concerning the scope of the constitutionally protected activity at issue in this case.[1] While the undersigned will utilize Commings' undisputed definition in making its determinations in this Report and Recommendation, no position is taken as to whether the scope Commings' definition of constitutionally protected activity would actually withstand legal scrutiny if challenged.

Before moving on, the Court must also define what constitutes "action" taken in retaliation for Commings' protected speech for purposes of deciding this motion. The parties can only agree that one action took place here; Flowers closed the chuckhole door on Commings' hand. As described, *supra*, there are two very different versions of the events in this case. At the summary judgment stage, however, the evidence must be considered in a light most favorable to the non-moving party, and the Court cannot make creditability determinations at the summary judgment stage. *See Anderson*, 477 U.S. at 255. Accordingly, the undersigned will

---

[1] The complaint alleges that "Flowers retaliated against Mr. Commings because Mr. Commings wrote letters complaining about the conditions of his confinement to IDOC administrators, his grievance counselor and Governor Patt Quinn, activities protected by the First Amendment." Doc. 1 at 11 ¶ 55. However, if the complaint were to be liberally construed, several more allegations could be considered to be related to "complaining about the conditions of his confinement."

7

include the following actions as adverse action taken by Flowers against Commings when assessing this case: 1) verbal threats prior to the June 24 incident; 2) the assault with the chuckhole door on June 24; 3) filing false reports regarding the June 24 incident; and 5) post-June 24 harassment.

Flowers argues that Commings cannot prove the causation element of his First Amendment retaliation claim.  The *Kidwell* case, decided by the Seventh Circuit in 2012, fully sets out what has seemed like an evolving causation standard for First Amendment retaliation claims since the U.S. Supreme Court's 2009 decision in *Gross v. FBL Fin. Services, Inc.*, 557 U.S. 167, 168, 129 S. Ct. 2343, 2346, 174 L. Ed. 2d 119 (2009).  The Seventh Circuit in *Kidwell* described the relevant causation standards as follows:

> For years, the Supreme Court had required that, to establish a prima facie case of retaliation, a plaintiff need only produce evidence sufficient to allow for an inference that his speech was a motivating factor in the [defendant]'s decision. *See Mt. Healthy Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); [*Spiegla v. Hull*, 371 F.3d 928, 941-43 (7th Cir. 2004)] (applying the test set forth in *Mt. Healthy*).  Then along came the Supreme Court's decision in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009), an Age Discrimination Employment Act case, which held that, "unless a statute provides otherwise, demonstrating but-for causation is a part of the plaintiff's burden in all suits under federal law." *Fairley v. Andrews*, 578 F.3d 518, 525–26 (7th Cir. 2009) (citing *Gross*, 129 S.Ct. at 2349).  Notably, *Gross* did not overrule *Mt. Healthy*.  This, in turn, created a tension in our case law when several post-*Gross* decisions intimated that the motivating-factor standard had been replaced by the but-for standard. *Compare Kodish v. Oakbrook Terrace Fire Protection Dist.*, 604 F.3d 490, 500–01 (7th Cir. 2010), *Gunville v. Walker*, 583 F.3d 979, 984 n. 1 (7th Cir. 2009), and *Fairley*, 578 F.3d at 525–26, with *Spiegla*, 371 F.3d at 941–43.  Thus, on the issue of causation, district courts were understandably puzzled over whether to apply the still-surviving motivating-factor test articulated in *Mt. Healthy* and *Spiegla*, or whether to discard that test in favor of the but-for test set forth in *Gross* and *Fairley*.  Many, like the district court in this case, disavowed the motivating-factor test and applied the but-for standard at the summary judgment stage. *See Greene v. Doruff*, 660 F.3d 975, 978 (7th Cir. 2011) (collecting cases).
> 
> This court's recent opinion in *Greene*, which was issued after the district court's summary judgment order in this case, shed some light on the "superficial" conflict between *Mt. Healthy/Spiegla* and *Gross/Fairley*, and set about

>reconciling their seemingly disparate holdings. *Id*. Here is the distinction: In the end, the plaintiff must demonstrate that, but for his protected speech, the [defendant] would not have taken the adverse action. This explains the holdings of *Gross* and *Fairley*, which were cases that discussed the plaintiff's burden of proving causation at trial. *See Gross*, 129 S.Ct. at 2347, 2351; *Fairley*, 578 F.3d at 526. But preliminarily at summary judgment, the burden of proof is split between the parties. Initially, to establish a prima facie case of retaliation, the plaintiff must produce evidence that his speech was at least a motivating factor—or, in philosophical terms, a "sufficient condition"—of the [defendant]'s decision to take retaliatory action against him. *Greene*, 660 F.3d at 979–80. Then, the burden shifts to the [defendant] to rebut the causal inference raised by the plaintiff's evidence. If the [defendant] fails to counter the plaintiff's evidence, then the [defendant]'s retaliatory actions are considered a "necessary condition" of the plaintiff's harm, and the plaintiff has established the but-for causation needed to succeed on his claim. *Id*. at 980.

*Kidwell*, 679 F.3d at 964-65. Thus, in deciding the causation element, the Court will first look to whether Commings can demonstrate that his protected activity was at least a motivating factor in Flowers' adverse action against him (a sufficient condition). *See Greene*, 660 F.3d at 979–80. If Commings can meet his burden, the Court will turn to whether Flowers has sufficiently rebutted Commings' evidence with evidence of his own demonstrating that the protected activity was not the but-for reason for his actions (not a necessary condition). *See id*.

Commings asserts that the timing of Flowers' adverse action against him, as well as the surrounding context, demonstrate that his protected activity was at least a motivating factor in taking the action. At the outset, Flowers correctly points out that suspicious timing by itself, even on the heels of protected activity, is insufficient to produce a triable issue of fact for trial on the causation issue. *See Kidwell*, 679 F.3d at 966 (The reason is obvious: "[s]uspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment." *Loudermilk v. Best Pallet Co*., 636 F.3d 312, 315 (7th Cir. 2011)) (citations omitted). "[F]or a suspicious-timing argument alone to give rise to an inference of causation, the plaintiff must demonstrate that 'an adverse … action follows close on the heels of protected expression,

9

and the plaintiff [must] show that the person who decided to impose the adverse action knew of the protected conduct.' " *Id*. (quoting *Lalvani v. Cook Cnty.*, 269 F.3d 785, 790 (7th Cir. 2001)).

In *Kidwell*, the plaintiff, a police officer that was ultimately terminated, brought a § 1983 action against his supervisors and mayor, alleging retaliation for exercising his First Amendment right to free speech. *See Kidwell*, 679 F.3d at 957-64. The Seventh Circuit upheld a District Court's ruling granting summary judgment for defendants in *Kidwell* after the plaintiff had argued that the suspicious timing of events gave rise to an inference that his protected speech was a motivating factor in the adverse employment actions taken against him. *See id*. at 969, 971. In reaching its conclusion on whether the adverse action followed "close on the heels" of the protected activity, the *Kidwell* court noted that such a determination depends on the context. *See id*. at 966 (providing that "the closer two events are, the more likely that the first caused the second … [b]ut it is clear from our case law that the time period between the protected activity and the adverse action must be very close." (citations and internal quotations omitted)). The *Kidwell* court ultimately determined that none of the employment actions that the plaintiff complained about followed close on the heels of his protected speech when the facts were considered in context. *See id*. at 969. Instead, the *Kidwell* court explained that there were "significant intervening events," including the plaintiff's own aberrant behavior and other intervening events, which occurred after the plaintiff's protected speech and caused the adverse actions to occur. *Id*. As a result, the plaintiff in *Kidwell* was unable to meet his burden of establishing that his protected activity was at least a motivating factor in the defendants' decision to take adverse action against him.

Here, the evidence regarding retaliation consists primarily of the depositions of Commings and Flowers. As the Court already alluded to, there are two very distinctive stories

10

told by a fair reading of the depositions. On the one hand, Flowers denies any adverse action toward Commings and claims his only interaction with him was the June 24 incident in which Flowers claims he defended himself from an assault by Commings. On the other hand, Commings' deposition details a series of adverse actions taken against him by Flowers. At this stage, the evidence is construed in favor of the non-moving party, and the Court may not choose which story is more credible. *See Anderson*, 477 U.S. at 255.

In contrast to the *Kidwell* case, there were no "intervening events" between Commings' protected activity and adverse action in many instances. In fact, the adverse action, when viewed in context, can easily be said to have followed "closely on the heels" of the protected activity. It also cannot be said that Flowers did not have knowledge of the protected activity. For example, Commings testified that he complained directly to Flowers about his cell conditions and informed Flowers of his intent to go on hunger strike. As discussed *supra*, the scope of constitutional activity at issue in this motion is undisputed and defined broadly to conclude anything related to Commings' complaints about his conditions of confinement. Immediately following his request to go on hunger strike, Flowers took adverse action against Commings by threatening, "I don't know where you think you're at, but we'll come in there and [expletive deleted] you up down here." The Seventh Circuit noted in *Kidwell* that the "time period between the protected activity and the adverse action must be 'very close.'" *Kidwell*, 679 F.3d at 966 (citation omitted). "[W]e typically allow no more than a few days to elapse between the protected activity and the adverse action." *Id*. at 966-67 (citing *Loudermilk*, 636 F.3d at 314–15 (holding that a worker who handed his supervisor a note that complained of workplace discrimination and was immediately fired had established an inference of causation by way of suspicious timing); *Casna v. City of Loves Park*, 574 F.3d 420, 422–23, 427 (7th Cir. 2009)

(holding that a one-day time period between the employee's complaint and her supervisor's recommendation to fire her was sufficient); *McClendon v. Ind. Sugars Inc.*, 108 F.3d 789, 796–97 (7th Cir. 1997) (holding that a two- to three-day time period between the employee's complaint and his discharge was sufficient)). Here, the evidence demonstrates that Flowers had knowledge of the protected activity, and that Flowers took adverse action almost immediately following Commings' complaints about his cell conditions. This evidence demonstrates that the protected activity was at least a motivating factor in Flowers' decision to take the adverse action.

The burden now shifts to Flowers to rebut this evidence with evidence that he would have taken the action in the absence of the protected activity. *See Greene*, 660 F.3d at 979–80. This evidence consists of Flowers' deposition, wherein he asserts that his only action with respect to Commings was in self-defense of an assault by Commings on June 24. He attests that he does not recall any other interactions before or after June 24. As already discussed, this evidence strongly conflicts with Commings' evidence, and now is not the appropriate time to decide which version of the story is more believable. At the very least, an issue of fact remains for trial as to whether Commings' protected activity was the but-for cause of Flowers' adverse actions.

### B. Sovereign Immunity

Defendant Flowers has also moved for summary judgment on the two pendant state-law tort claims in this case; Count 2 (battery) and Count 4 (intentional infliction of emotional distress). Flowers argues that the Court lacks jurisdiction over the state-law tort claims because the Illinois Court of Claims has exclusive jurisdiction. The Illinois Constitution provides that "[e]xcept as the General Assembly may provide by law, sovereign immunity in this State is abolished." Ill. Const. 1970, art. XIII, § 4. The State Lawsuit Immunity Act, 745 ILCS § 5/1 *et seq.*, provides that "except as provided in the Illinois Public Labor Relations Act, the Court of

Claims Act, the State Officials and Employees Ethics Act, and Section 1.5 of this Act, the State of Illinois shall not be made a defendant or party in any court." 745 ILCS § 5/1.  The Court of Claims Act, 705 ILCS § 505/1 *et seq.*, provides that the Illinois Court of Claims has exclusive jurisdiction to hear and determine "[a]ll claims against the State founded upon any law of the State of Illinois." 705 ILCS § 505/8.  The question in this case, then, is whether the state-law tort claims are "claims against the State."

On its face, a lawsuit against Flowers in his individual capacity is not technically a claim against the State of Illinois, but the relevant caselaw has made clear that the Court must look beyond these labels.  "Whether an action is in fact one against the State, and hence one that must be brought in the Court of Claims, depends not on the formal identification of the parties but rather on the issues involved and the relief sought." *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990) (citations omitted).  An action can be said to be "against the State" when "there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State ..." *Id.* (citation and internal quotations omitted).

Flowers argues that there are no allegations that he acted outside the scope of his employment.[2]

---

[2] Flowers highlights that Commings "stated in discovery that there were no allegations that Defendant Flowers acted outside the scope of his employment." Doc. 40 at 6.  Flowers goes so far as to attach a letter regarding discovery disputes from counsel for Commings that states "Plaintiff made no allegation whether any action by Defendant was taken outside the scope of his employment." Doc. 40-1 at 91.  In federal court, however, it is not necessary for a plaintiff to cite specific legal conclusions in his allegations. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a

>With respect to the first prong of the test, "[a]n employee's actions are considered within the scope of employment where the alleged facts are consistent with an intent to further the state's business." *Sellers v. Rudert*, 395 Ill.App.3d 1041, 335 Ill.Dec. 241, 918 N.E.2d 586, 592 (Ill.App.Ct. 2009). Correspondingly, a plaintiff seeking to sue employees of an Illinois state agency must show that the defendants harbored personal animosity toward the plaintiff or that they committed the alleged acts for reasons other than what the defendants perceived to be in the best interests of the state agency. *See, e.g., Cortright v. Doyle*, 386 Ill.App.3d 895, 325 Ill.Dec. 874, 898 N.E.2d 1153, 1160 (Ill.App.Ct. 2008) (in a suit against employees of the Illinois Department of Children and Family Services ("DCFS"), finding that the defendants' alleged conduct did not exceed the scope of their authority where plaintiff "failed to allege any specific facts in her complaint that showed the supervisors harbored personal animosity toward her or acted for any purpose other than what they perceived to be the best interests of DCFS"). "When the Illinois courts speak of an act 'beyond the scope of authority,' they contemplate an employee acting not just in a wrongful manner, but sticking his nose in business where it doesn't belong." *Turpin v. Koropchak*, 567 F.3d 880, 883 (7th Cir. 2009) (emphasis in original).

*Ingram v. Illinois Dept. of Corr.*, Case No. 10-933-GPM, 2011 WL 1519623 (S.D. Ill. Apr. 20, 2011).

In *Ingram*, the Southern District of Illinois had an opportunity to consider whether or not the plaintiff, a former inmate confined in a prison under the authority of the IDOC, could proceed on several state-law claims against the IDOC and the warden of Menard Correctional Center when an inmate died of hyperthermia as a result of being confined in isolation in an overheated cell without adequate monitoring by guards. *Id*. The deceased's successors in interest filed a lawsuit that included claims under the Wrongful Death Act and the Survival Act (Counts 1 and 2), two counts of negligence (Counts 3 and 4), and a § 1983 claim against the IDOC and the warden in his individual capacity (Count 5). *Id*. The *Ingram* court dismissed all of the state law claims on sovereign immunity grounds except for the § 1983 claim against the warden in his individual capacity (Count 5). *Id*. With respect to whether or not the warden's actions were

---

claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (citing *Twombly* (internal quotations omitted)).

considered within the scope of his employment, the *Ingram* court stated that the supervision, training, and direction of IDOC personnel at Menard to place prisoners in isolation, monitor their condition, and see that they afforded adequate medical are duties within the scope of the warden's employment. *See id.* at *3. Because the plaintiff only challenged the manner that the warden carried out his duties, there was no allegation that the warden did anything beyond the scope of his employment or normal job functions. *See id*.

Unlike *Ingram*, Commings is challenging more than just the manner that Flowers carried out his duties as a correctional officer. Indeed, the complaint clearly spells out allegations that, if proven, would collectively demonstrate that Flowers acted outside the scope of his employment because he had personal animosity toward Commings. After threatening Commings with violence on a prior occasion, it is alleged that Flowers purposely attempted to injure Commings by slamming his hand in the chuckhole door. It is alleged that Commings suffered emotional distress as a result of Flowers' intentional action of severely injuring Commings. Finally, it is alleged that Flowers approached Commings after the incident and stated, "I wish I could have chopped your whole [expletive deleted] arm off." It can hardly be said that these actions fall within the scope of Flowers' employment or that he perceived he was acting in the best interests of the IDOC. *See Cruz v. Cross*, Case No. 08-CV-4873, 2010 WL 3655992 (N.D. Ill., Sept. 10, 2010) (finding that an action for battery against a defendant correctional officer was not an action against the state when the defendant was found to have acted outside the scope of his because the plaintiff inmate alleged that the defendant beat him using a weapon, handcuffs, and defendant continued to beat him even after he had been restrained). Accordingly, the state-law claims in this case cannot be considered "claims against the state," and this Court has jurisdiction to resolve them.

### C. Qualified Immunity

Finally, the parties disagree as to whether Flowers is entitled to qualified immunity in this case. In order to defeat the defense of qualified immunity, Commings will need to demonstrate "(1) that the defendants conduct violated his constitutional rights, and (2) that the violated right was clearly established at the time of the alleged misconduct." *Lewis v. Downey*, 581 F.3d 467, 478 (7th Cir. 2009) (citing *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Payne v. Pauley*, 337 F.3d 767, 775 (7th Cir. 2003)). Here, Flowers argues that he is entitled to qualified immunity on the first prong; the defendants conduct violated his constitutional rights. Specifically, Flowers argues as follows:

> To the extent this Court now rules that Defendant Flowers is liable in a retaliation claim, without evidence the Defendant's action was motivated in part by retaliation, that decision would represent an announcement of new law. Accordingly, Defendant is entitled to qualified immunity.

Doc. 40 at 8. The Court has already determined that genuine issues of material exist for trial as to whether the Flowers violated Commings' constitutional rights on the retaliation claim. Thus, the Court will proceed to the second part of the inquiry. *See id.* (citing *Hill v. Shelander*, 992 F.2d 714, 717-18 (7th Cir. 1993)).

The second part of the qualified immunity inquiry is a question of law. *See id.* (citing *Marshall v. Allen*, 984 F.2d 787, 793 (7th Cir. 1993) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985))). In order to defeat this part of the inquiry, the right that was allegedly violated must be clearly established "in a particularized sense." *See id*. (quotations and citations omitted). The complete question is "whether, operating under the state of the law as it existed at the time of relevant events, a reasonable officer would have known that the particular action at issue was unlawful." *See id*. at 479 (citing *Juriss v. McGowan*, 957 F.2d

16

345, 350 (7th Cir.1992); *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (stating that the contours of a constitutional right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right" (quotations omitted)); *Hill*, 992 F.2d at 718). With respect to First Amendment retaliation, the Seventh Circuit has stated:

> … retaliation against constitutionally protected conduct is actionable regardless of whether the defendant's actions independently violate the constitution. A prison official in [the defendant's] position therefore would have been on notice that any retaliation, whatever its shape, could give rise to liability.

*Babcock v White,* 102 F.3d 267, 276 (7th Cir 1996). A prison official Flowers' position, therefore, would have been on notice that any retaliation could give rise to liability. Perhaps these facts will be construed in a different light at trial. The defendants may raise the qualified immunity argument again at that time. Thus, Flowers' qualified immunity argument should be denied at this time.

## IV. RECOMMENDATION

It is recommended that Defendant Mathew Flowers' (Doc. 39) motion for partial summary judgment be denied.

**SO RECOMMENDED.**

**DATED: January 28, 2013.**

*s/ Philip M. Frazier*
PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE
